## Case No. 1,503.

### BLAKE v. SPERRY.

#### [2 N. Y. Leg. Obs. 251.]

Circuit Court, D. Connecticut. June 29, 1843.

PATENTS—SUBJECT OF PATENT — IMPROVEMENTS—
COMBINATION—SPECIFICATION.

1. The plaintiffs obtained a patent to manufacture casters for bedsteads; the only difference between the casters ordinarily used and those of the patentees consisted in the adoption of such a mode of construction and applying casters that the length of the vertical axis might be extended at pleasure without materially enhancing their cost. In an action for an infringement of the patent a verdict was found for the plaintiffs. On motion for a new trial, to set aside the verdict on the ground that the patent embraced what was not the subject of patent, *held*, that as the subject of the patent was new, although it was involved in parts of a machine which was used before, the patent was valid.

[See Park v. Little, Case No. 10,715.]

[2. Where a patent is obtained for parts of a machine, involved with other parts which may have been used before, it is essential that the new parts be so distinctly pointed out, that the claim may not cover any parts which are old.]

[See Barrett v. Hall, Case No. 1,047; Brooks v. Bicknell, Id. 1,944; Hovey v. Stevens, Id. 6,746; Sullivan v. Redfield, Id. 13,597; Phillips v. Page, 24 How. (65 U. S.) 164; Parks v. Booth, 102 U. S. 96.]

At law. This was an action [by Philos Blake and others against Alvin Sperry] for an alleged violation of a patent, by the manufacture and sale by the defendant of a specific quantity of the articles which the patentee claimed the exclusive right to manufacture and sell.

It appeared that the patent was dated the 30th June, 1838, and was entitled "Blake's new and useful improvement in the mode of constructing casters and applying them to bedsteads."

The specification is in the following words: "To all whom it may concern: Be it known, that we, Philos Blake, Eli W. Blake, and John A. Blake, of New Haven, in the county of New Haven, and state of Connecticut, have invented a new and useful improvement in the mode of constructing casters, and applying them to bedsteads;

and we do hereby declare that the following is a full and exact description thereof: Our improvement consists chiefly in the adoption of such a mode of constructing and applying casters that the length of the vertical axis (on which the excellence of casters very much depends) may be extended at pleasure without materially enhancing their cost, which is effected in the following manner: We make the roller of the caster of metal or other material, in the same manner and form as the rollers of casters heretofore in use. The piece or part which receives the roller, like the corresponding part of casters heretofore in use, consists of two arms, one on each side of the roller, to receive the ends of the axis about which the roller revolves; which arms, running obliquely, unite together beyond the rim of the roller and, being then rounded and extended upward perpendicularly, constitute the pintle or vertical axis of the caster. This pintle we make 4 inches long, and one-half inch diameter at the lower end, and, tapering to one-fourth inch diameter near the upper end, it terminates in a conical point. The caster, thus constructed, we apply to the bedstead post in one of the following methods:

"We bore a hole one-half inch diameter, and nearly 4 inches deep, into the center of the post. We then insert into this hole an instrument which cuts out a conical cavity in the wood, at the bottom of the hole; the base of said cavity being nearly or quite equal to the diameter of the hole; the angle of its vertex somewhat more obtuse than that of the conical point of the pintle. The pintle being then inserted, if the hole is of the proper depth, the weight of the bedstead will come wholly upon the point of the pintle, while the conical cavity in which it stands will maintain the coincidence of its axis with that of the post, in opposition to the lateral strain. This method is believed to be sufficient where the post is of hard wood, as is usually the case.

"Or, secondly: We bore the hole which is to receive the pintle five-eighths of an inch deeper than above specified, and insert a cylinder of cast iron or other metal, five-eighths of an inch long, having a conical cavity in its lower or outer end, and being a little larger in diameter than the hole, so that it may be firmly held by the wood when driven to the bottom of the hole; thus giving a metallic bearing to the upper end of the pintle.

"Or, thirdly: In addition to the metallic bearing to the upper end of the pintle, as just described, we make a metallic one of the lower, and also by simply bushing the lower end of the hole to the depth of an inch. The bush may consist of a strip of sheet iron of proper length, bent round into a hoop, the ends being barely butted together. One edge of this hoop being bevelled off on the outside, and placed over the hole, and driven in, the bush will be retained

firmly by the compression of the wood. If the wood of the post be very hard, the hole may require to be slightly enlarged at its outer extremity, in order to receive the bush.

"Or, fourthly: We propose to dispense with the upper metallic bearing, retain only the lower one, as on further experience we may find advisable.

"Casters applied in either of these methods may be instantly taken off and replaced at pleasure, which we esteem to be an advantage, especially in putting up and taking down the bedstead. If, however, it should be preferred to have them fastened in, this may be effected in several ways: The pintle, instead of terminating in a conical point, may terminate in a wire or pivot running up through a hole in the upper metallic bearing, and secured there by a collet, over which it is riveted; or the pintle may be encircled by a small flange near its lower extremity, and a piece of sheet iron, fastened to the bottom of the post, may reach under the flange; or the flange may be located on the pintle above the bush which makes the lower metallic bearing; and this bush may be made in two semicircular pieces, which, when put together, embrace the pintle below the flange; and both may be introduced together into the hole in the post.

"The caster constructed and applied as above described differs from other casters heretofore known and used, in the following essential and characteristic particulars, which, as applied to casters, we claim respectively as our invention, and desire to secure by letters patent: 1. In that the upper and lower bearing of the vertical axis, being distinct pieces, are both or either of them inserted or supported separately in a hole bored in the post or leg to receive that axis, the leg itself being relied upon to hold them respectively in their proper position in relation to each other, or to the axis. 2. In that the upper end of the vertical axis sustains the weight of the bedstead in the manner and under the circumstances as follows, to wit: By bearing either directly upon the wood, at the bottom of a hole bored in the leg to receive that axis, or upon a distinct piece of iron inserted at the bottom of said hole, and unconnected with the lower lateral bearing of vertical axis. 3. In that the upper end of the vertical axis receives the weight of the bedstead, and is at the same time controlled or governed in opposition to the lateral strain, in the manner, and under the circumstances, following, to wit: By being formed into a conical point, and inserted into a conical cavity in the wood at the bottom of a hole bored in the leg to receive that axis, or into a similar cavity in a distinct piece of iron, inserted into a hole. and supported there separately from, or independently of, the lower lateral bearing of that axis."

The cause was tried before the circuit court in September, 1842, and a verdict rendered for the plaintiffs in the sum of fifty dollars.

Application was now made for a new trial on the ground that the patent embraces what is not the subject of patent, inasmuch as the patent had been obtained for that which had, previous to the obtaining thereof, been known to the public.

R. J. Ingersoll, in support of motion.
R. S. Baldwin and William Hungerford, contra.

JUDSON, District Judge, delivered the opinion of the court.

The motion to set aside the verdict proceeds upon the ground, substantially, that the patent does in fact embrace what is not the subject of the patent. In other words, the patent covers what had long been in use anterior to the patent. The claim thus set up requires a particular examination of the patent, and the language by which the right is supposed to have been secured to the patentees. It is a principle too well settled to require discussion or examination, that, if a patent cover matter not patentable the whole patent is void. It then becomes important, in deciding this case, to know with precision what is secured in this patent. To do this, we must first see what the patentees do not claim.

First, the roller is not claimed. The roller is disclaimed in these words: "We make the roller of the casters of metal, or other material, in the same manner and form as the rollers heretofore in use." The arms are disclaimed: "The piece or part which receives the roller, like the corresponding part of casters heretofore in use, consists of two arms, one on each side of the roller, to receive the ends of the axis about which the roller revolves." The pintle is also disclaimed: "Which arms, running obliquely unite together beyond the rim of the roller, and being then rounded and extended upward perpendicularly, constitute the pintle or vertical axis of the casters."

Having before us the various specimens of casters constructed prior to Blake's patent, this language may be well understood to exclude from the patent in question all claim to the "wheel," the "arms," and the "pintle," as each of them had been used in some form, prior to the right set up by the patent in question.

The plate caster is that which has been longest in use, and this has the wheel in all respects like the wheel used by the Blakes. but the process of attaching it to the furniture differs materially. The plate caster is attached by screws running through the plate, depending entirely on the screws to keep it fast and preserve its motion. Blake's patent differs from the plate caster.

The socket caster has for its pintle a metallic sheath or socket, covering the entire pintle. To use this caster, the socket must first be let into the leg of the bedstead, or the furniture with which it is to be used.

The sheath or socket increases the expense, and to use it too much of the leg of the furniture must be cut away.

The French caster is always incumbered with a large, heavy and expensive iron frame, and braces. The pintle and wheel of the French caster are not unlike Blake's wheel and pintle, but the difference consists in that Blake's can be, and is in fact, used without the heavy, costly and cumbrous iron frame and braces. Blake's is simple, and the French caster is complicated, and in its use requires a covering of wood or cloth to hide its deformities. This heavy frame work is a part of the caster, and in a description of the French caster this frame work is embraced. Not so with Blake's.

The center-pin caster varies but little from the common old fashioned plate caster. It has the same wheel, arms and plate, with a short horn rising from the center of the plate, designed to steady the movements, but still the plate and screws are always used with the center-pin caster, and upon them alone depends the security of the caster to the furniture. In this Blake's differs materially.

The invalid caster has the same form of wheel and pintle as Blake's, but has never been used in the same manner. This, in its use and operations, has been attacked by a kind of wood frame instead of an iron frame. The pintle is much longer than Blake's, but as the pintle in itself is not claimed as any part of the present patent, the difference consists in the peculiar application of Blake's casters to the furniture. It is found that the wood frame and fixtures belong to, and always must be used with, the invalid caster; but these are now entirely dispensed with by Blake's invention.

The safe caster is the only remaining one to be considered. This, again, has the wheel and pintle similar in form and material, yet the method of applying it to the furniture and using it with the bedstead is so entirely diverse that its antecedent use can constitute no objection to this patent. If this were to be used upon the bedstead as it has been used on the safe for many years, its application to the bedstead would be to the outside of the leg, and would be confined there by some sort of metallic clasps or staples. Blake's patent differs from the safe caster in that it dispenses with all metallic fixtures and external irons, such as clasps, staples or sockets.

It was shown on the trial, by unquestionable evidence, that each and every other caster was so constructed and applied as to require either plates, frames, straps, staples or thimbles. Blake's invention allows the caster to be applied directly to the center of the foot and leg of the furniture, without any of the attendants or parts of the old machinery, always in use with all other casters. By the simple process of boring a hole in the leg of the bedstead,

Blake's caster may be used without any frame work whatever. When the wood is soft, it only requires the use of the bearings.

In the statement of the case, it was remarked, that the present suit seeks to recover damage for the manufacture and sale of Blake's caster with the bearings. The proof before the jury was that the defendant had manufactured and sold a quantity of Blake's casters with the bearings. It may be proper, in this aspect of the question, to define more particularly what may be called "Blake's casters and bearings." It is the old wheel and pintle so adapted to, and arranged with, the leg of the bedstead, by inserting it in its center, that the top of the pintle may be received in the conical cavity of the upper metallic bearing driven to the top of the hole, while the lower metallic bearing constitutes a bush to the lower end of the hole. The top point of the pintle sustains the weight, while the lower bearing secures the pintle against the lateral motion.

The peculiar device or invention secured by these letters patent seems to consist in a new adaptation and arrangement of a part of an old caster with the furniture, in a manner heretofore unknown. This device dispenses with the old plate and screws by which the plate caster was attached; it dispenses with the iron frame belonging to, and a part of, the French caster; it dispenses with the wood frame and braces used with, and a part of, the invalid caster; it dispenses with the clasps and staples used with, and a part of, the safe caster; it dispenses with the sheath which was a part of the socket caster. This new arrangement is quite visible when in operation. By it the furniture is moved with ease and facility. The modus operandi is peculiar to itself. Its simplicity and cheapness render the invention useful.

That part of the invention which is new appears "with reasonable certainty on the face of the patent." When a patent is obtained for parts of a machine involved with other parts which may have been used before, it is essential that the new parts should be so distinctly pointed out that the claim may not cover any parts that are old. This motion assumes the ground that this patent is defective in this particular. But an examination of what is claimed, and what is disclaimed, on the face of the patent, leads to the conclusion that the patent in question is not subject to this objection. The "old parts" are very clearly stated, and substantially there is nothing claimed to be new except the arrangement of these old parts of a caster with, and their adaptation to, the furniture, without the other parts of other casters, which have ever and at all times been used with the old casters.

It is not necessary, at this late day, to go into the consideration of what may be denominated the principle of this invention. That may be seen in the modus operandi,

and, according to well settled authority, that is enough.

In determining this motion it is not necessary for the court to settle what might be its construction of the patent, were the action brought for the manufacture, sale or use of Blake's casters without the "bearings." As has already been remarked, this action seeks to recover damages sustained by the plaintiffs in consequence of the manufacture and sale of Blake's casters with the "bearings." It may not be improper, however, to add that the arrangement of the "upper and lower bearings," and the manner by which the same were attached to the wood, are claimed to be embraced within the "new invention," but the use of both these "bearings" may be dispensed with when the wood is sufficiently hard to resist the friction, as the patentees claim. In the case on trial there was no proof that the defendant had sold the article to be used without the bearings. It is not necessary, therefore, to go farther in this case than to determine that this patent for Blake's caster with the bearings is a valid patent.

Motion for new trial denied.

[NOTE. Patent No. 821 was granted to Philos Blake, June 30, 1838, and was also involved in Blake v. Smith, Case No. 1,502.]